Filed 5/23/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| RAR2 VILLA MARINA CENTER CA SPE, INC. et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> COUNTY OF LOS ANGELES, <br><br> Defendant and Respondent. | B315898 <br><br> (Los Angeles County Super. Ct. No. 20STCV21214) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Patricia D. Nieto and Kristin S. Escalante, Judges. Affirmed.

Greenberg Traurig, Ruben Sislyan, and Cris K. O'Neall for Plaintiffs and Appellants.

Dawyn Harrison, County Counsel, Peter Bollinger, Assistant County Counsel, and Drew M. Taylor, Deputy County Counsel, for Defendant and Respondent.

————————————

This appeal provides a cautionary tale of how a property owner's challenge to a county assessor's valuation of the owner's property can result in the assessor recommending—and an appeals board adopting after a hearing—a valuation higher than the initial valuation. Unfair as this may seem, the assessor and the appeals board have a duty to the property owner and the taxpayers to correctly assess the value of property. As long as the assessor provides notice to the property owner of the assessor's intent to present evidence of a higher valuation at the appeals board hearing, the statutory scheme vests the appeals board with the authority (and the obligation) to determine the full value of the property, after considering evidence submitted by the assessor and the property owner, even if that value is higher than the initial valuation.

RAR2 Villa Marina Center CA SPE, Inc., RAR2-Villa Marina Center CA, LLC, and Villa Marina Company, LLC (collectively, Villa entities) appeal from a judgment entered in this property tax refund action after the trial court sustained the demurrer filed by the County of Los Angeles (County) without leave to amend and denied the Villa entities' summary judgment motion, upholding the decision of the Los Angeles County Assessment Appeals Board (Board) concerning the 2011 valuation of a shopping center owned by the Villa entities.

In 2006 the Villa entities purchased the shopping center, located in the Marina del Rey area of the County, for $100 million. In 2011 the Los Angeles County Assessor's Office (Assessor) determined the value of the shopping center had decreased, setting the assessment roll value (roll value) at approximately $94 million. The Villa entities filed an assessment appeal with the Board seeking a further reduction of the assessed

2

value to $48 million.  The Villa entities agreed to multiple postponements of the Board hearing, ultimately to August 9, 2019.

During the pendency of the assessment appeal, the Assessor issued three "raise letters" advising the Villa entities of the Assessor's intent to introduce evidence at the Board hearing to support an increase in the shopping center's 2011 roll value to approximately $113 million.  In response, the Villa entities requested they be allowed to withdraw their application, accepting the initial valuation.  The Board rejected the withdrawal request, and, following the 2019 hearing, the Board determined the shopping center's 2011 roll value should be increased to the value requested by the Assessor.

On appeal, the Villa entities contend the Assessor had no authority to issue a raise letter recommending an increase in the property's valuation more than one year after the initial assessment because Revenue and Tax Code section 4831, subdivision (c),[1] required that any correction to the initial assessment be made within one year if the error "arises solely from a failure to reflect a decline in the taxable value of real property."  According to the Villa entities, because the Assessor issued the raise letters after the original decline-in-value assessment in 2011, the raise letters constituted a roll correction subject to the one-year limitations period under section 4831, subdivision (c).

Contrary to the Villa entities' argument, a raise letter issued under section 1609.4 providing notice, in the context of an

---

[1]     Further undesignated statutory references are to the Revenue and Tax Code.

assessment appeal, that the assessor recommends a *higher* valuation than the roll value is not properly characterized as a proposal by the assessor to correct the roll value to reflect a *decline* in the property's value, even if the initial assessment reflected a decline in value, and therefore, the one-year limitations period under section 4731, subdivision (c), does not apply. We recognize that if the Villa entities had not challenged the initial valuation, they would not have suffered an increase in the valuation for that year. But once they filed an appeal of the initial valuation, the assessment appeals process opened the door to a determination by the Board of the correct value—higher or lower. The Villa entities have not shown error in the Board's conclusion the correct value was significantly higher than the initial valuation.

We also reject the Villa entities' argument that laches barred the Assessor from recommending to the Board a higher assessed value because the Assessor did not make his final recommendation until seven years after the Villa entities submitted their application requesting a reduction of the shopping center's value for 2011. The Villa entities' agreement to multiple continuances of the hearing date is fatal to their challenge. Further, although they were unable to cross-examine the initial appraiser (who had died since preparing his appraisal report), the Villa entities were able to question the new appraiser who testified at the hearing, and they have failed to show any prejudice.

We agree with the County that the Board carried out its statutory duty in adopting the higher valuation for the property. We affirm.

4

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Initial Assessment and Assessment Appeal*

The Villa entities purchased the shopping center on June 28, 2006 for $100 million.  On July 6, 2011 the Assessor made a "[d]ecline in [v]alue" assessment of $94,470,000 as the shopping center's roll value for the 2011-2012 tax year.  On November 28, 2011 the Villa entities filed an application for changed assessment with the Board, seeking a reduction of the shopping center's roll value to $48 million and a refund of property taxes paid for the 2011-2012 tax year.

The Board hearing was set for February 12, 2013, but the Villa entities and the Assessor agreed to postpone the hearing to resolve whether certain property parcels should be valued together for the assessment.[2]  On February 12, 2013 the Villa entities submitted a waiver and agreement for postponement of the Board hearing.[3]  The Board granted the postponement request and rescheduled the hearing for February 4, 2014.

On September 19, 2013 the Assessor issued a raise letter pursuant to section 1609.4, advising the Villa entities of the Assessor's intent to recommend an increase in the shopping center's assessed value at the February 4, 2014 hearing. Section 1609.4 provides that at a Board hearing on an application, "[t]he assessor may introduce new evidence of full

---

[2]     The shopping center is situated on seven property parcels with separate parcel numbers.

[3]     The Villa entities waived their right to have their "application heard and decided by the Assessment Appeal Board within a two-year period from the date of the filing as set forth by subdivision (c) of Section 1604."

5

cash value of a parcel of property at the hearing . . . ." However, "[i]f the assessor proposes to introduce evidence to support a higher assessed value than he placed on the roll, he shall, at least 10 days prior to the hearing, inform the applicant of the higher assessed value and the evidence proposed to be introduced and he may thereafter introduce such evidence at the hearing." (*Ibid*.)

On January 9, 2014 the Assessor issued a second raise letter with supporting documentation, including an appraisal report prepared by appraiser Tom Partaker. The raise letter notified the Villa entities of the Assessor's intent to recommend an increase in the shopping center's roll value at the February 4, 2014 hearing to $112,545,441. At the February 4, 2014 hearing, the Villa entities submitted a waiver and agreement for postponement of the hearing, again waiving their right to have their application heard and decided by the Board within two years from the date of filing as provided under section 1604, subdivision (c). The Board granted the postponement request and continued the hearing to October 31, 2018.

B.     *The Villa Entities' Application Withdrawal Request*

At the outset of the October 31, 2018 hearing, the Villa entities submitted a request to withdraw their application, which would maintain the 2011 roll value at $94,470,000. The Assessor opposed the request, arguing the Villa entities could not withdraw their application because the request was made after the Assessor issued the raise letters in advance of the February 4, 2014 hearing. Therefore, the Assessor asserted, under Appeals Board Rules 14.H and 14.I, adopted June 29, 2010 (Board

6

Rules 14.H and Rule 14.I),[4] the Villa entities could only withdraw their application upon the written consent of the Assessor, which the Assessor declined to give. The Villa entities argued, inter alia, that the Board should allow the withdrawal in light of the Assessor's failure to submit a timely raise letter prior to the initial scheduled hearing on February 12, 2013.

After a hearing, on January 25, 2019 the Board denied the Villa entities' request to withdraw their application. The Board found article XIII, section 16 of the California Constitution[5]

---

[4] Board Rule 14.H provides in part, "If the assessor requests that the board increase the assessed value and proposes to introduce evidence to support a higher assessed value than that placed on the roll, the assessor shall, at least ten (10) days prior the hearing, give notice in writing to the applicant or the applicant's authorized representative of the higher assessed value and the evidence proposed to be introduced. The assessor may thereafter introduce such evidence at the hearing, and shall present his or her case first unless the applicant has failed to supply all information by law to the assessor." Board Rule 14.I provides, "Upon written request signed by the applicant or applicant's authorized representative, an application may be withdrawn at any time prior to or at the time of the hearing. However, if the assessor has given written notice pursuant to subdivision H of this rule, and a copy of such notice has been filed by the assessor with the clerk[, t]hereafter, *a withdrawal of the application may only be effected upon written stipulation by the applicant or applicant's authorized representative, and the assessor*." (Italics added.)

[5] Article XIII, section 16 of the California Constitution provides in part, "County boards of supervisors shall . . . adopt rules of notice and procedures for those boards as may be required to facilitate their work and to ensure uniformity in the

authorized the County Board of Supervisors to adopt rules of notice and procedures for the Board, and Board Rule 14.I was valid because it did not conflict with the Constitution or any statute or regulation.  Further, the Villa entities had a right to withdraw their application prior to submission of the Assessor's raise letters without the Assessor's consent, but they waited until after the raise letters were issued.  In addition, the Villa entities were not denied a fair hearing because they were allowed to present evidence on their withdrawal request at the October 13, 2018 hearing.  The Board also found that because the Villa entities requested a continuance of the February 12, 2013 hearing and executed a two-year waiver under section 1604, subdivision (c), they could not complain "that the Assessor took advantage of the extra time afforded by the continuance to issue the 'raise letter.'"

C.     *The Board Hearing on Valuation*

The Board subsequently set a hearing on the shopping center's valuation for August 9, 2019.  On July 24, 2019 the Assessor issued a third raise letter, again informing the Villa entities of the Assessor's intent to recommend at the hearing an increase in the shopping center's assessed value from $94,470,000 to $112,545,441.  The July 24, 2019 raise letter was accompanied by Partaker's July 1, 2013 appraisal report with supporting documentation.

Appraiser Deborah Grossman testified at the hearing on behalf of the Assessor because Partaker had passed away.  In her

processing and decision of equalization petitions, and may provide for their discontinuance."

8

testimony, Grossman relied on Partaker's 2013 appraisal report. Grossman testified the shopping center's roll value in 2011 was $126,660,000 (above the proposed roll value of $112,545,441). Grossman considered the market rent per square foot, vacancy rate, expense ratio, and capitalization rate for triple net leases[6] of the retail spaces based on the size of the space (above or below 2,000 square feet) and the type of tenants (movie theater, grocery store, drug store, and food and non-food services). Sean Kelley, the authorized agent for the Villa entities, questioned Grossman about her calculations.

Kelley relied on the data used by the Assessor, but he testified higher numbers should have been used for the vacancy rate, expense ratio, and capitalization rate, and lower market rent numbers should have been used for most of the retail spaces. He also provided other modified calculations to support his valuation. Kelley testified that, based on his calculations, the shopping center's value was $93,700,000, which supported the 2011 roll value of $94,470,000.

On December 9, 2019 the Board issued its decision and findings of fact, finding the Assessor proved by a preponderance of the evidence the higher assessment it recommended in its raise

---

[6] Under a triple-net lease, "the lessee pays a property's operation and maintenance costs including taxes, utilities, and insurance." (*Munoz v. Patel* (2022) 81 Cal.App.5th 761, 767.) The Assessor calculated the capitalization rate pursuant to California Code of Regulations, title 18, section 8, subdivision (g)(1), which provides that the capitalization rate may be developed "[b]y comparing the net incomes that could reasonably have been anticipated from recently sold comparable properties with their sales prices, adjusted, if necessary, to cash equivalents . . . ."

9

letters.  The Board adopted the Assessor's vacancy rate, rent loss adjustment, expense ratio, and most of the market rent numbers. The Board applied a 5.95 percent capitalization rate, which was lower than the Villa entities' 6 percent capitalization rate but higher than the Assessor's 5.75 percent capitalization rate.  The Board calculated the net operating income, applied the 5.95 percent capitalization rate, deducted the rent loss adjustment, and concluded the shopping center's value was $113,585,941. Because the Board's valuation of the shopping center was higher than the adjusted base-year value, the Board found the adjusted base-year value of $112,545,441 should be the 2011 roll value.

D.    *The Villa Entities' Complaint*

On June 5, 2020 the Villa entities commenced this action against the County.  In their second amended verified complaint, the Villa entities asserted a single cause of action for refund of property taxes pursuant to section 5140,[7] alleging the Board erroneously relied on Board Rule 14.I to deny their request to withdraw their application for a reduction in the assessed value; the Assessor's raise letters were untimely under sections 1609.4 and 4831, subdivision (c), as well as Board Rule 14.H; and the Board erred in relying on the Assessor's evidence of a higher assessed value than the roll value.  The second amended complaint also asserted that the raise letters were untimely

---

[7]    Section 5140 provides, "The person who paid the tax . . . may bring an action . . . against a county or a city to recover a tax which the board of supervisors of the county or the city council of the city has refused to refund on a claim filed pursuant to Article 1 (commencing with Section 5096) of this chapter."

10

under property tax rules promulgated by the California State Board of Equalization.

E.  *The County's Demurrer*

On December 4, 2020 the County filed a demurrer to the second amended verified complaint.  The County argued the one-year limitations period in section 4831, subdivision (c), did not apply to the raise letters (only to a decline in taxable value); the raise letters were not untimely under section 1609.4, State Board of Equalization Property Tax Rule 313, subdivision (f) (Cal. Code of Regs., tit. 18, § 313 (Property Tax Rule 313), subd. (f)),[8] or Board Rule 14.H; and the Assessor did not have a duty to issue a new raise letter for the October 31, 2018 hearing.

In their opposition, the Villa entities argued the one-year limitations period under section 4831, subdivision (c), applied to the raise letters because the 2011 assessment was a decline-in-value assessment that triggered the limitations period.  Further, the raise letters were untimely because they were not issued at least 10 days prior to the first scheduled Board hearing set for February 12, 2013, or before the October 31, 2018 hearing, as required under section 1609.4.  Finally, they argued the Assessor's request to increase the property's assessed value was barred by the doctrine of laches because the Assessor waited seven years after the filing of the appeal to propose a higher valuation.

---

[8]     Property Tax Rule 313, subdivision (f), requires the Assessor to provide 10 days' notice of a proposed higher assessed value (a raise letter) in the context of an assessment appeal and governs the burden of proof at the hearing.

F.    *The Villa Entities' Motion for Summary Judgment*

On March 15, 2021 the Villa entities moved for summary judgment, asserting the same arguments they presented in their opposition to the demurrer, including that the raise letters were untimely.  In addition, the Villa entities argued that because the raise letters were untimely, the Board erred in denying their request to withdraw their application for a reduction in valuation.

G.    *The Trial Court's Ruling*

After a hearing on June 18, 2021, the trial court[9] denied the Villa entities' summary judgment motion and sustained the County's demurrer without leave to amend.  The court found that under Board Rule 14.I, because the Assessor had issued a raise letter, the Villa entities could only withdraw their application with the Assessor's consent, which the Assessor declined to give.  The court found further, "The Assessor's recommendation to increase a previously granted 'decline-in-value' is not a 'failure to reflect' a decline in value.  Therefore, on its face, section 4831(c) does not apply and cannot provide relief here."  The court also held section 1609.4 did not require the Assessor to issue a raise letter prior to the first scheduled Board hearing or for each later hearing.  Finally, the court rejected the Villa entities' laches argument.

On July 23, 2021 the trial court[10] entered judgment for the County against the Villa entities and, based on its order sustaining the demurrer without leave to amend, dismissed the

---

[9]    Judge Patricia D. Nieto.

[10]    Judge Kristin S. Escalante.

12

case under Code of Civil Procedure section 581, subdivision (f)(1). The Villa entities timely appealed.

## DISCUSSION

A.    *Real Property Assessment Under Propositions 8 and 13*

Article XIII, section 1 of the California Constitution states in part, "All property is taxable and shall be assessed at the same percentage of fair market value.  When a value standard other than fair market value is prescribed by this Constitution or by statute authorized by this Constitution, the same percentage shall be applied to determine the assessed value."  (Cal. Const., art. XIII, § 1, subd. (a).)  "Proposition 13, an initiative measure enacted in June 1978, added article XIII A to the California Constitution and changed the taxation of real property by replacing 'the fair market valuation standard with that of acquisition value.' [Citation.]  Article XIII A, section 2 provides that all real property, except for property acquired prior to 1975, shall be assessed and taxed at its value on the date of acquisition, subject to a 2 percent maximum annual inflationary increase. [Citation.]  This is sometimes referred to as the indexed or adjusted base year value."  (*Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 409 (*Western States*); accord, *City and County of San Francisco v. County of San Mateo* (1995) 10 Cal.4th 554, 561 ["Article XIII A limits both the valuation of real property for tax purposes and the maximum tax rate that can be imposed on the resulting real property valuation."].)

Because Proposition 13 only governs assessment and taxation of real property that appreciates in value, in November

1978 California voters passed Proposition 8 to address how real property should be assessed and taxed when the property declines in value.  (*Western States, supra*, 57 Cal.4th at pp. 409-410.)  Proposition 8 amended article XIII A to read, "The full cash value base may reflect from year to year the inflationary rate not to exceed 2 percent for any given year or reduction as shown in the consumer price index or comparable data for the area under taxing jurisdiction, or may be reduced to reflect substantial damage, destruction, or other factors causing a decline in value." (Cal. Const., art. XIII A, § 2, subd. (b).)  Thus, "when the value of real property declines to a level below its adjusted base year value under Proposition 13, the value of the property is determined according to its actual fair market value."  (*Western States*, at p. 410.)

Following enactment of Proposition 8, the Legislature formed a task force to study implementation of the new tax system under Propositions 13 and 8.  (*Western States, supra*, 57 Cal.4th at p. 410.)  Based on the recommendations of the task force, the Legislature amended section 51, subdivision (a), which specifies how the taxable value of real property "shall" be determined.  (See *Western States*, at p. 410.)  As amended, section 51, subdivision (a), now provides for an annual adjustment of the taxable value of real property "upward or downward, depending on market conditions."  (*Metropolitan Culinary Services, Inc. v. County of Los Angeles* (1998) 61 Cal.App.4th 935, 939.)  Specifically, section 51, subdivision (a), provides that the taxable value of real property shall, with limited exceptions, "be the lesser of:  [¶]  (1) Its base year value, compounded annually since the base year by an inflation factor," not to exceed a 2 percent increase over the prior year's value, and

14

"(2) Its full cash value, as defined in Section 110 [defining "'full cash value'" or "'fair market value'"] as of the lien date, taking into account reductions in value due to damage, destruction, depreciation, obsolescence, removal of property, or other factors causing a decline in value."  After the Assessor grants a reduction under Proposition 8 due to a decline in the property's value, "section 51, subdivision (e), provides that the assessor shall continue to reappraise the reduced-value property in subsequent years until its fair market value exceeds the Proposition 13 value."[11]  (*El Dorado Palm Springs v. Board of Supervisors* (2002) 104 Cal.App.4th 1262, 1266-1267 (*El Dorado*).)

B.      *Standard of Review*
        "'Although a local assessment appeals board decision arises from an administrative hearing process, the mechanism for seeking judicial review of the decision "'is significantly different from that of other administrative agency decisions.  Ordinarily the aggrieved taxpayer's remedy is not to seek administrative mandate pursuant to Code of Civil Procedure section 1094.5, but to pay the tax and file suit in superior court for a refund.'"'"  (*Fisher v. County of Orange* (2022) 82 Cal.App.5th 39, 51; accord,

---

[11]     Section 51, subdivision (e), specifies that after the taxable value of property is reduced pursuant to section 51, subdivision (a)(2), "the value of that property shall be annually reappraised at its full cash value as defined in Section 110 until that value exceeds the value determined pursuant to paragraph (1) of subdivision (a)."

15

*William Jefferson & Co., Inc. v. Orange County Assessment Appeals Bd. No. 2* (2014) 228 Cal.App.4th 1, 10-11.)

"[A] county board of equalization 'is a constitutional agency exercising quasi-judicial powers'" delegated to it by the California Constitution.  (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1307; accord, *Fisher v. County of Orange, supra*, 82 Cal.App.5th at p. 51.)  "Such a board's ""factual determinations are entitled on appeal to the same deference due a judicial decision, i.e., review under the substantial evidence standard.' [Citation.]" [Citation.]  When the assessment appeals board decides a question of law, such as the interpretation of a statute, courts are authorized to conduct an independent reassessment.'" (*Fisher*, at p. 51; accord, *Manson Construction Co. v. County of Contra Costa* (2020) 56 Cal.App.5th 1079, 1087.)

When interpreting a statute, "our core task . . . is to determine and give effect to the Legislature's underlying purpose in enacting the statutes at issue." (*McHugh v. Protective Life Ins. Co.* (2021) 12 Cal.5th 213, 227; accord *Jarman v. HCR ManorCare, Inc.* (2020) 10 Cal.5th 375, 381.)  "We first consider the words of the statutes, as statutory language is generally the most reliable indicator of legislation's intended purpose. [Citation.]  We consider the ordinary meaning of the relevant terms, related provisions, terms used in other parts of the statute, and the structure of the statutory scheme." (*McHugh*, at p. 227; accord, *Jarman*, at p. 381 ["'We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.'"].)  "If the relevant statutory language is ambiguous, we look to appropriate extrinsic sources, including the legislative history, for further

16

insights." (*McHugh*, at p. 227; accord, *Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 14 [where the statutory language supports more than one reasonable construction, the court "may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history"].)

C.      *Section 4831, Subdivision (c), Does Not Apply*

The Villa entities contend the one-year limitations period in section 4831, subdivision (c), applied to issuance of the raise letters because the Assessor proposed in the letters a correction in the roll value after a decline-in-value assessment. However, nothing in section 4831, subdivision (c), sets a time limit on the Assessor's presentation of evidence at a hearing in an assessment appeal to show the value of the property was *higher*, not lower, than the enrolled value.

Section 4831, subdivision (c), provides, "Any error or omission involving the exercise of assessor value judgment that arises solely from a failure to reflect a decline in the taxable value of real property . . . , as required by paragraph (2) of subdivision (a) of Section 51 shall only be corrected within one year after the making of the assessment that is being corrected." As discussed, section 51, subdivision (a), in turn, states that the taxable value of real property is the lesser of (1) the base year value (here, the $100 million purchase price), as adjusted by a yearly inflation factor not to exceed 2 percent per year, or (2) the current full cash value (based on a decline in value pursuant to Proposition 8). The Assessor's higher valuation of the shopping center in the raise letter is in no way a correction addressing the failure of the Assessor to reflect a decline in value pursuant to Proposition 8.

17

The Villa entities argue *El Dorado, supra*, 104 Cal.App.4th at pages 1270 to 1271 supports their position. But *El Dorado* only addressed an assessor's ability to correct for a property's decline in value beyond the one-year limitations period of section 4831, subdivision (c), not a raise letter issued as part of an assessment appeal. There, the owner of a mobile home park submitted an assessment appeal with the county assessment appeals board requesting the board reduce the property's 1993 tax assessment, arguing the property's value had declined. (*Id.* at p. 1266.) The appeals board upheld the value on the assessment roll for 1993 (reflecting the purchase price plus 2 percent increases each year), but the trial court granted the owner's petition for a writ of mandate, requiring the appeals board to vacate its findings and conduct a new hearing. After a second hearing, in 1997 the appeals board found the property's fair market value for 1993 was less than the enrolled value, requiring a reduction in the local roll. However, during and after the assessment appeal, from 1994 through 1998, the assessor continued to increase the enrolled value on the property by 2 percent each year. The owner again appealed to the county assessment appeals board, challenging the assessments for the five-year period. The appeals board rejected the challenge, finding the appeals of the 1994 and 1995 assessments were untimely, and the fair market value for the later three years exceeded the enrolled values, and therefore the enrolled values were proper. In an ensuing lawsuit by the owner for tax refunds for the five years, the trial court agreed with the appeals board's findings. (*Ibid.*)

The Court of Appeal rejected the county's contention that the one-year limitations period in section 4831, former

subdivision (b) (now subdivision (c)), prevented the county from correcting the 1994 and 1995 assessments to reflect a reduction in value. (*El Dorado, supra*, 104 Cal.App.4th at pp. 1270-1271.) The court explained, "[T]he delay in establishing the Proposition 8 reduction [in 1997] necessarily extends the time period for correcting an error in the tax assessments until after the property has been reappraised and the taxable value established." (*Ibid.*) Contrary to the Villa entities' contention, the *El Dorado* court did not address whether a recommendation to increase the assessed value of property pursuant to a raise letter must be made within one year of a decline-in-value assessment pursuant to section 4831, subdivision (c).

The Villa entities also argue that allowing the Assessor to avoid section 4831, subdivision (c)'s limitations period during the pendency of an assessment appeal would defeat section 4831's purpose of requiring the assessor to diligently propose any higher assessed value within one year following a decline-in-value assessment. The legislative history reflects a contrary intent.

In 1995 the Legislature added subdivision (b) to section 4831 (now subdivision (c)) by enactment of Assembly Bill No. 1620 (1995-1996 Reg. Sess.) (Stats. 1995, ch. 164, § 4, p. 618).[12] The Senate Rules Committee analysis of Assembly Bill

_____

[12]    In 1996 the Legislature amended section 4831, former subdivision (b), to read, "Any error or omission involving the exercise of a value judgment that arises solely from a failure to reflect a decline in the taxable value of real property as required by *paragraph (2) of subdivision (a)* of Section 51 *shall* be corrected within one year after the making of the assessment that is being corrected." (Stats. 1996, ch. 1087, § 23.5, italics

19

No. 1620 explained the need for the amendment: "In recent years housing values have declined in many areas, and assessors have been unable to keep up with the workload of adjusting the roll for all applicable downward value changes. Therefore, in some cases taxpayers receive a tax bill based on value growing by the two percent inflation factor when in fact the value should have been reduced; but by the time they receive the tax bill it is too late to file for assessment reduction. [¶] This bill would give assessors the authority to reduce assessed values via a roll correction within one year after the assessment is completed, in situations where the assessor failed to properly reflect a decline in value pursuant to Proposition 8." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 1620 (1994–1995 Reg. Sess.) as amended June 27, 1995, pp. 2-3; see also Governor's Off. of Planning & Research, Enrolled Bill Rep. on Assem. Bill No. 1620 (1995–1996 Reg. Sess.) as amended June 27, 1995, p. 2 ["Under existing law, the county assessor is authorized to correct errors on the roll within four years of the error for any kind of error except errors in value judgment. This precludes the county assessor from being able to perform Proposition 8 reductions after the roll has been closed. [¶] [Assembly Bill No.] 1620 would authorize a county assessor to correct an erroneous entry on the

added to show amendment.) In 2010 the Legislature moved former subdivision (b) to subdivision (c) and modified the language further to read, as it does today, "Any error or omission involving the exercise of *assessor* value judgment that arises solely from a failure to reflect a decline in the taxable value of real property as required by paragraph (2) of subdivision (a) of Section 51 shall *only* be corrected within one year after the making of the assessment that is being corrected." (Stats. 2010, ch. 654, § 11, italics added to show amendment.)

property tax roll resulting solely from a failure to account for a decline in the taxable value of real property within one year of the entry."].)

Further, in enacting section 4831, subdivision (c), the Legislature intended to authorize the county assessor to correct the local roll within one year to reflect a property's decline in value pursuant to Proposition 8 and section 51, subdivision (a)(2), without the property owner having to file an assessment appeal. As the Assembly Committee on Revenue and Taxation bill analysis explained, "When property owners and assessors have minor disagreements over the assessed value of the property, the ability to correct errors determined to be caused by insufficient consideration of an overall decline [in] real estate values will allow the assessed value to be changed without having to file an assessment appeal." (Assem. Com. on Revenue and Taxation, Analysis of Assem. Bill No. 1620 (1995–1996 Reg. Sess.) as amended May 4, 1995, p. 4.) Nothing in the legislative history reflects the Legislature's intent to limit the ability of the county assessor to recommend in a raise letter an increase in valuation of property in connection with an assessment appeal.

D.    *Applying Section 4831, Subdivision (c), to Raise Letters Would Be Inconsistent with the Statutory Scheme for Assessment Appeals*

Application of the one-year limitations period under section 4831, subdivision (c), to raise letters informing an applicant that the county assessor intends to present evidence at an assessment appeals board hearing to support an increase in a property's valuation would also be inconsistent with the nature of assessment appeals under California law. Under section 1603, subdivision (a), a taxpayer may apply to reduce the assessment

21

on the local roll to reflect a decline in value of the property. (See *Williams & Fickett v. County of Fresno* (2017) 2 Cal.5th 1258, 1269; *Next Century Associates, LLC v. County of Los Angeles* (2018) 29 Cal.App.5th 713, 718.) Section 1603, subdivision (a), provides, "A reduction in an assessment on the local roll shall not be made unless the party affected or his or her agent makes and files with the county board a verified, written application showing the facts claimed to require the reduction and the applicant's opinion of the full value of the property." The taxpayer's application for a reduction in the assessment must be made to the "'county board,'" which includes the "'county board of supervisors meeting as a county board of equalization or an assessment appeals board.'" (*LA Live Properties, LLC v. County of Los Angeles* (2021) 61 Cal.App.5th 363, 371.)

Assessment appeals seeking a reduction in the local roll "are then resolved through a process that can involve a public hearing (§§ 1605.4, 1605.6), exchanges of information (§ 1606), examinations under oath (§ 1607), and the collection and introduction of additional evidence in support or refutation of an appeal (§§ 1609, 1609.4, 1609.5, 1610.2). Ultimately, 'the county board shall equalize the assessment of property on the local roll by determining the full value of an individual property, by assessing any taxable property that has escaped assessment, correcting the amount, number, quantity, or description of property on the local roll, canceling improper assessments, *and by reducing or increasing an individual assessment . . . .*' (§ 1610.8; see also § 1605, subd. (e).)" (*Williams & Fickett v. County of Fresno, supra*, 2 Cal.5th at p. 1269, italics added; accord, *LA Live Properties, LLC v. County of Los Angeles, supra*, 61 Cal.App.5th at p. 371.)

22

The Assessor's issuance of the raise letters pursuant to section 1609.4 was consistent with this statutory scheme. As discussed, section 1609.4 requires the county assessor to provide 10 days' notice of the assessor's intent to introduce evidence at a board hearing of a recommended higher assessed value. After issuing the raise letter, the county assessor may introduce supporting evidence of a higher valuation at the board hearing, but it is the county board that has the duty to determine the full value of the property. (See § 1610.8 ["After giving notice as prescribed by its rules, the county board shall equalize the assessment of property on the local roll by determining the full value of an individual property, . . . [among other things] by reducing or increasing an individual assessment, as provided in this section. The full value of an individual property shall be determined without limitation by reason of the applicant's opinion of value stated in the application for reduction in assessment pursuant to subdivision (a) of Section 1603."].) Applying section 4831, subdivision (c), to bar the Assessor from issuing any raise letter more than one year after the original assessment would have tied the Assessor's hands, preventing him from presenting at the Board hearing the appraisal report that provided a comprehensive analysis of the value of the property.

On appeal, the Villa entities do not dispute that the raise letters complied with the 10-day procedural notice requirement of section 1609.4.[13] Instead, they contend that allowing the

---

[13] The Villa entities no longer contend, as they had argued in opposition to the County's demurrer and in their summary judgment motion, that the raise letters were untimely because they were not issued at least 10 days before the first scheduled

23

Assessor to issue a raise letter seven years after the appeal was filed, without applying the one-year limitations period of section 4831, subdivision (c), would permit the Assessor to issue a raise letter at any time upon his whim or in retaliation against the taxpayer for filing an assessment appeal.  But the Assessor did not issue the raise letter at his "whim," instead properly giving notice under section 1609.4 that he intended to present evidence at the Board hearing to support an increase in the roll value. Further, there is a built-in incentive for the Assessor to correctly assess the value of the property at the time of the initial valuation.  Under State Board of Equalization Property Tax Rule 321, subdivision (a), there is a presumption that the assessor has properly performed his or her duties, with the applicant having the burden of proving the value on the assessment roll is incorrect.  (Cal. Code of Regs., tit. 18, § 321, subd. (a).)  However, if the Assessor seeks to raise the roll value as part of an assessment appeal, the Assessor has the burden to prove the higher valuation.  (Property Tax Rule 313, subd. (f) ["When the assessor proposes to introduce evidence to support a higher assessed value than the value on the roll, the assessor no longer has the presumption accorded in regulation 321(a) of this subchapter and the assessor shall present evidence first at the hearing, unless the applicant has failed to supply all the

_____

Board hearing and that an additional raise letter should have been issued 10 days before the October 31, 2018 Board hearing. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal "deemed waived"]; *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 72 ["""Issues not raised in an appellant's brief are [forfeited] or abandoned.""""].)

24

information required by law to the assessor."]; see *Sky River LLC v. County of Kern* (2013) 214 Cal.App.4th 720, 731 [the presumption that the assessor has properly performed his duties in calculating the value of the property "disappears when the assessor seeks to increase the valuation of the taxpayer's property; in that event, the burden is on the tax assessor to prove the higher value of the property"].) And, as discussed, at the hearing it is the Board, and not the Assessor, that determines the full value of the property, including an increase or reduction in assessed value pursuant to section 1610.8.

The Villa entities also suggest the Assessor could issue a raise letter at any time, 10 or even 20 years after the original assessment date, depriving the taxpayers of the guarantees of finality and predictability. But section 1604, subdivision (c), requires the Board to decide the assessment appeal within two years of the submission of a timely application for a reduction in the assessment; if the appeal is not decided in that time frame, the applicant's proposed value becomes the enrolled value, unless the applicant and the Board agree to an extension of time or the application is consolidated with another application by the same applicant.[14] (*Ibid*.) Here, the Villa entities agreed to the delay

---

[14] Section 1604, subdivision (c), provides, "If the county board fails to hear evidence and fails to make a final determination on the application for reduction in assessment of property within two years of the timely filing of the application, the applicant's opinion of value as reflected on the application for reduction in assessment shall be the value upon which taxes are to be levied for the tax year or tax years covered by the application, unless either of the following occurs: [¶] (1) The applicant and the county board mutually agree in writing, or on the record, to an

that resulted in the 2019 hearing date.[15]

E.   *The Doctrine of Laches Does Not Apply*

"'Laches is based on the principle that those who neglect their rights may be barred, in equity, from obtaining relief.'" (*Krolikowski v. San Diego City Employees' Retirement System* (2018) 24 Cal.App.5th 537, 568; accord, *City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 248.)  "'The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.'" (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 68; accord, *Robert F. Kennedy Medical Center v. Belshe* (1996) 13 Cal.4th 748, 760, fn. 9 ["Under appropriate circumstances, the defense of laches may operate as a bar to a claim by a public administrative agency . . . if the requirements of unreasonable delay and resulting prejudice are met."]; see *Krolikowski*, at p. 569-570 [laches did not apply to bar city's

---

extension of time for the hearing.  [¶]  (2) The application for reduction is consolidated for hearing with another application by the same applicant with respect to which an extension of time for the hearing has been granted pursuant to paragraph (1). . . . "

[15]   The Villa entities also argue in their opening brief that the Board's denial of the Villa entities' request to withdraw their application was "legal error" because the raise letters did not comply with section 4831, subdivision (c)'s one-year limitations period.  This argument fails in light of our conclusion the one-year limitations period does not apply to raise letters.  Thus, the Board correctly concluded under Board Rule 14.I that the Villa entities could not withdraw their application because the Assessor did not consent.

pension plan from correcting error that resulted in overpayment to former employees of pension benefits where there was no unreasonable delay].) "'"[L]aches is not available where it would nullify an important policy adopted for the benefit of the public."'" (*Krolikowski*, at p. 568; accord, *Prang v. Los Angeles County Assessment Appeals Bd. No. 2* (2020) 54 Cal.App.5th 1, 16 ["Applying laches here would nullify the 'constitutional duty [of assessors] to levy retroactive assessments' as a means of fulfilling the constitutional mandate of 'equal and uniform' taxation of 'all' property because it would place new limits on assessors' ability to fulfill that duty over and above the time limits created by our Legislature . . . ."].)

"Prejudice is never presumed; rather it must be affirmatively demonstrated by the defendant in order to sustain his burdens of proof and the production of evidence on the issue." (*Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624; accord, *Drake v. Pinkham* (2013) 217 Cal.App.4th 400, 406.) "'Generally, laches is a question of fact, but where the relevant facts are undisputed, it may be decided as a matter of law.'" (*Krolikowski v. San Diego City Employees' Retirement System, supra*, 24 Cal.App.5th at p. 568; accord, *City of Oakland v. Oakland Police & Fire Retirement System, supra*, 224 Cal.App.4th at p. 248.)

The Villa entities argue laches barred the Assessor from recommending a higher assessed value at the Board hearing because there was an unreasonable, seven-year delay between the filing of the assessment appeal on November 28, 2011 and the Assessor's assertion of a higher assessed value at the October 31, 2018 Board hearing. The Villa entities acknowledge the Assessor issued two raise letters prior to the February 4, 2014 hearing,

attaching the appraisal report to the second letter, but they point out the Assessor did not present evidence of the higher value at the February 4 hearing.  However, the Assessor could not have presented evidence at the February 4 hearing because the Board continued the hearing at the request of the Villa entities.  And the Villa entities agreed to a further continuance of the hearing to October 31, 2018.  Thus, there was no unreasonable delay by the Assessor in presenting evidence of the property's higher assessed value.  The lack of unreasonable delay is fatal to the Villa entities' laches argument.

Moreover, the Villa entities have not demonstrated prejudice.  They argue prejudice based on their inability to cross-examine Partaker about his 2013 appraisal, which the Assessor relied on to support the higher valuation.  But the Villa entities were able to cross-examine Grossman about Partaker's appraisal report, and they have failed to show how they were prejudiced by their inability to examine Partaker, only stating generally that Grossman had to "make assumptions" about the report and "did not know the answer to several basic questions relating to the report."  To the extent Grossman was unable to answer questions about Partaker's underlying assumptions in preparing the report, if anything, this weakened the Assessor's position.  The Villa entities do not provide any examples showing otherwise.

Nor did the Villa entities' inability to cross-examine Partaker about the appraisal report deny them a fair hearing.  *La Prade v. Department of Water and Power* (1945) 27 Cal.2d 47 (*La Prade*), relied on by the Villa entities, is distinguishable.  There, a city department discharged a civil service employee for publishing misleading statements about the department, and an administrative board sustained the discharge based on an

28

investigation report it had on file, even though the report was not introduced into evidence or provided to the employee at the hearing. (*Id*. at pp. 49-50.) The Supreme Court held the discharged employee was denied a hearing, reasoning the employee was not "apprised of the evidence against him in order that he may refute, test, and explain it." (*Id*. at pp. 52-53.)

Unlike *La Prade*, in which the city department failed to provide the employee with the investigator's report on which the department relied to uphold the discharge, the Villa entities were provided the appraisal report used by the Assessor to support the higher valuation. Further, in *La Prade* the discharged employee had no opportunity to question the investigator (or anyone) about the report. (*La Prade, supra*, 27 Cal.2d p. 50.) As discussed, although the Villa entities were not able to cross-examine Partaker, they had an opportunity to examine Grossman about the appraisal report at the Board hearing. Absent a constitutional right (none is asserted here),[16] *La Prade* does not require reversal of an administrative decision where the petitioner was provided the evidence relied on by the agency and was able to examine a knowledgeable representative about the evidence.

---

[16] The Supreme Court has clarified that the right to a hearing at issue in *La Prade* was not based on a constitutional right. (See *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 231, fn. 13 [*La Prade* "construed nonconstitutional rights to a hearing and found those rights violated in circumstances where a decision was rendered on evidence never disclosed to the losing party and which the losing party had no opportunity to controvert"].)

The Villa entities also argue their inability to cross-examine Partaker violated Property Tax Rule 313, subdivision (e), which provides with respect to hearings on assessment appeals that "[t]here shall be reasonable opportunity for the presentation of evidence, for cross-examination of all witnesses and materials proffered as evidence, for argument and for rebuttal." There was no violation. At the Board hearing, the Villa entities were able to cross-examine the Assessor's witness (Grossman), to present their own evidence of the shopping center's value, including the testimony of Kelley, and to make arguments to rebut the Assessor's higher valuation. Further, Property Tax Rule 313, subdivision (e), specifies that "[t]he hearing need not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence may be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs. Failure to enter timely objection to evidence constitutes a waiver of the objection." The Villa entities did not object to the Board's admission of the appraisal report or to Grossman's testimony at the hearing.

## DISPOSITION

The judgment is affirmed.  The County of Los Angeles is entitled to recover its costs on appeal.


FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.